AIRIKAINEN *v.* HOUGHTON COUNTY STREET-RAILWAY CO.

1. WITNESSES—EXAMINATION—HARMLESS ERROR.

The error in overruling a proper question to a witness is cured by subsequently allowing a question calling for a similar answer to be put and answered.

2. SAME.

Asking an improper question cannot be regarded as prejudicial, where the court promptly sustained an objection to it and

stated that it was improper, and objecting counsel made no request to charge in reference to it.

3. TRIAL—ARGUMENT OF COUNSEL—REFERENCE TO ABSENCE OF WITNESSES.

Where, in an action against a street-railroad company for negligence, it appeared that there were upwards of 50 passengers on the car at the time of the accident, and the company produced only the motorman and one passenger as witnesses, and counsel severely criticised one of plaintiff's witnesses, counsel's argument on failure of the company to bring in the conductor or other passengers, if unwarranted, is unprejudicial.

4. STREET RAILROADS—KILLING STOCK—NEGLIGENCE—CARE REQUIRED—INSTRUCTIONS.

In an action against a street-railroad company for negligently killing a cow on its tracks, instructions as to care required examined, and *held* not prejudicial to defendant.

5. SAME—EVIDENCE—SUFFICIENCY.

Evidence examined, and *held* to make a case for the jury.

Error to Houghton; Streeter, J. Submitted October 7, 1904. (Docket No. 44.) Decided November 15, 1904.

Case by Charles Airikainen against the Houghton County Street-Railway Company for the negligent killing of a cow. There was judgment for plaintiff, and defendant brings error. Affirmed.

*Gray, Haire & Stone,* for appellant.

*W. A. Burritt,* for appellee.

MOORE, C. J. In August, 1902, a cow belonging to plaintiff, which he allowed to run at large, was killed while on the track near a crossing, by a car belonging to the defendant. From a judgment in favor of the plaintiff the case is brought here by writ of error.

Counsel for appellant say the questions involved are:

(1) Whether the court erred in refusing to permit the witness Davey to testify whether, in his judgment, the cow could have got across the track before the car struck it if it had not suddenly stopped.

(2) Whether the following question, put by plaintiff's counsel to the witness Wint, was not improper, and prejudicial to defendant, viz. : "You are the man that was running the car at the time Mr. Boivin was injured ?"

(3) Whether the remarks of plaintiff's counsel to the jury, suggesting that, if the defendant had put the conductor and the fifty-seven passengers on the car upon the stand, they would have testified against defendant, were not improper, and prejudicial to the defendant.

(4) Whether the court erred in refusing to instruct the jury as requested by defendant in its third request to charge.

(5) Whether the court erred in instructing the jury upon the question of what constitutes gross negligence.

(6) Whether the court erred in refusing to direct the jury to find a verdict for the defendant as requested by its fourth request to charge.

(7) Whether the court erred in overruling and not granting defendant's motion for a new trial for the foregoing reasons, and because the verdict of the jury was against the weight of evidence.

We will consider these questions in the order presented by counsel.

1. Mr. Davey was a passenger. He testified to seeing the cows, and the distance the cows were from the car, and what they did. He was then asked :

" *Q.* · When you saw her step upon the track, did you think that she would clear the track before the car reached her ?"

Upon objection the question was excluded. We do not need to decide whether this was error, because almost immediately, upon the cross-examination, he stated :

" I did not see it [the cow] stop, but it was on the track the last time I saw it. I thought it was going to get across, and was surprised that the collision occurred."

It will be observed the defendant obtained the opinion of the witness as fully as though the question of counsel had been answered, and the error, if it was one, was not reversible error.

2. The record shows in relation to this assignment of

error as follows: Mr. Wint was the motorman. At the commencement of his cross-examination the following occurred:

"*Q.* You are the man that was running the car at the time Mr. Boivin was injured?

"*Mr. Gray:* If your honor please, I have been anticipating something of that kind. I think it is entirely improper. No reference should be made to any prior accident. It certainly will tend to prejudice the jury.

"*The Court:* I think that is so, Mr. Burritt. It does not seem to me to be necessary to go into the facts of other accidents. You cannot prove negligence in this accident by other accidents.

"*Mr. Burritt:* That is not the purpose. It is only to refresh the witness' memory."

This occurrence was one of the reasons assigned on the motion for a new trial. In disposing of the motion the trial judge said:

"In the brief counsel urges:

"'True, the court held that the question was improper, but in a very mild way, and we do not think it can be said that the impression produced (and, we say, deliberately and intentionally produced) on the minds of the jury was removed by the court's remarks.'

"I can hardly agree with counsel. An explanation was made, although it does not appear in the record, which would do away entirely with any question of deliberate intention on the part of the counsel in asking the question. Nor does it seem to me a very mild way in which the court held the question improper. Mr. Gray did not simply object to the question. With force he characterizes it as entirely improper, and designed to prejudice the jury; and, while making no formal objection, his remarks were adopted and enforced by the court in the first sentence, 'I think that is so, Mr. Burritt,' including everything and indorsing everything that has been said by Mr. Gray with regard to the question. At the time that seemed to be all that was necessary, even supposing the question had been one deliberately introduced in the case by the attorney. If it were not enough in the mind of the objecting counsel, he could have requested reference to it in the charge."

The question was an improper one. The court so told

the jury, and apparently judge and counsel alike thought all had been said that was necessary. If cases are to be reversed because of the situation shown here, it would be necessary to reverse nearly every hotly contested case.

3. This is based on the following: During the argument of counsel for plaintiff to the jury the following proceedings were had:

"*Mr. Burritt:* Where is the conductor that was on that car?

"*Mr. Gray:* I object to that, your honor.

"*Mr. Burritt:* I was saying, gentlemen of the jury, that they say that this lady, our witness, is the star actor. The motorman has testified. Where is the conductor who was running this car, and who had charge of it? Why don't they bring him here?

"*Mr. Gray:* To that we object, your honor, as entirely improper.

"*The Court:* I think that counsel has a right to comment on witnesses that were not produced that were on the car.

"*Mr. Gray:* I take an exception.

"*Mr. Burritt:* I say, gentlemen of the jury, where are the fifty passengers? The testimony is that there were fifty passengers on the car. We have only one of these passengers here.

"*Mr. Gray:* We object to that statement for the same reason, and take an exception.

"*Mr. Burritt:* We might have had, gentlemen of the jury, fifty-seven or fifty-eight star actors here had the railroad company wanted other star actors. They only brought one."

The defendant had sworn one passenger and the motorman as witnesses. The record shows the car had a conductor and upwards of 50 passengers. It was not shown any effort had been made to obtain their attendance, nor was the absence of any of them accounted for. It is evident counsel had criticised severely one of the witnesses for the plaintiff. Under these circumstances we do not think, if the allusion made exceeded the latitude to which he was entitled in making his argument, that it constituted reversible error.

4, 5, and 6 may be considered together. The defendant offered four written requests to charge. The first two were given. The third and fourth were not given. The third reads as follows:

" It is not the duty of street-railway companies to stop or reduce the speed of their trains or cars when they see cows or other animals alongside their tracks. It is only when such animals are on their tracks, or the men in charge of the trains or cars have good reason to believe that they will go thereon before said trains or cars shall have passed, that the company is called upon to stop or reduce the speed of such trains or cars. When they have notice or knowledge of such a situation that to proceed will probably result in injury to or the destruction of persons or property, then they are required to use all possible precautions to guard against such injury or destruction; but until they have notice or knowledge of such a situation it is their right to proceed at the usual speed along and upon their own tracks and right of way, and they will not, in such cases, be liable for injury to or the destruction of persons or property happening upon sudden emergencies which they could not reasonably anticipate. And the court instructs you that in this case the defendant was not obliged to stop its cars, or reduce the speed thereof, at the time and place in question, unless the situation was such that the motorman knew, or had good reason to believe, that to proceed as he was going would result in injury to or the killing of the cow. If he did not know or have good reason to believe this, then the defendant would not be liable in this case, notwithstanding the cow was killed by being struck by the car. And you are instructed in this connection that the law is slow to impute to men in charge of street railway or other trains or cars carrying passengers such reckless and wanton conduct as would be that of running against animals on the tracks, where the result might be not only the killing of the animals, but the derailing of the trains or cars, and injury to or the death of the passengers; and jurors should not infer such conduct except upon clear proof of its existence."

The fourth was a request to direct a verdict in favor of defendant.

The first and second of defendant's requests read:

"(1) Under the declaration in this case there can be no recovery by the plaintiff for any ordinary negligence on the part of the street-railway company. Plaintiff can only recover in case it is established by a preponderance of the evidence that the acts of the street-railway company, which it is alleged resulted in the killing of plaintiff's cow, were, under the circumstances testified to, willful, or wanton and reckless. If, therefore, you find from the evidence that the defendant, if guilty of anything, was only guilty of ordinary negligence, or that it was not guilty of willful or wanton and reckless conduct, your verdict should be for the defendant. This is the rule in cases where the plaintiff in a suit is himself guilty of negligence contributing to the injury or destruction of himself or his property, and under the law in this State it is contributory negligence for a person to allow his cows or cattle to run at large without being in the charge of any one. It is for this reason that the plaintiff in this case must prove gross negligence on the part of the defendant, in order to entitle him to recover.

"(2) The plaintiff cannot recover in this case unless you find that a preponderance of the evidence has established the fact that the defendant was guilty of gross negligence in the killing of plaintiff's cow, as testified to. I instruct you that 'gross negligence' means an intentional failure to perform a manifest duty in reckless disregard of the consequences, as affecting the life or property of another, and also implies a thoughtless disregard of consequences without the exercise of any effort to avoid them. Unless, therefore, you find from the evidence that the defendant, when it saw plaintiff's cow upon the track, or had good reason to believe it would go or stay upon the track, did nothing to prevent running against the cow, but ran on in reckless disregard of the consequences of collision with the cow, you cannot find a verdict for the plaintiff, but must find for the defendant."

In addition to giving these requests, the judge also charged:

"The plaintiff claims there was a clear and unobstructed view, from the point where the cow was struck, up the defendant's track, for a distance of several hundred feet, and that the cow was in plain view of the motorman who was running the car, and that he saw, or should have seen, the cow, and her apparent danger. The plaintiff charges the

defendant with gross negligence; and, for the plaintiff to recover, he must prove by a preponderance of evidence that the cow was killed as a result of the gross negligence of the defendant.   The term 'gross negligence' means an intentional failure to perform a manifest duty in reckless disregard of the consequences, as affecting the life or property of another.   It implies a thoughtless disregard of the consequences, without the exercise of any effort to avoid them; but it is not meant that the motorman must have actually intended to do the particular wrong complained of.

"It was the duty of the motorman, while running the car, to keep it under control, and to be on the alert to avoid accidents, and, if he saw the cow on the track, or in such close proximity to the track as to be in peril, and he could have avoided the injury by slacking the speed of the car, or by stopping the car, it was his duty to do so, if he could; and his failure to do so would be wanton and reckless conduct—would be gross negligence on his part, which would render the defendant liable for the killing of the cow."

In the recent case of *Kotila* v. *Street Railway Co.*, 134 Mich. 314, there is a very full discussion of the care required by motormen in cases like the present.   In that case there is a full collation of cases.   We think, if there was any one entitled to complain of the charge of the court, it was not the defendant.

7. Did the court err in not directing a verdict for defendant and not granting a new trial because the verdict was against the weight of evidence ?   We have already referred to the fact that counsel on both sides assumed the jury were familiar with the premises.   The trial judge heard and saw the witnesses.   There was testimony on the part of the plaintiff to the effect:

"There was more than one cow on the track.   I think there was about three cows on the track there, feeding, or somewhere, and I said to Mrs. Maynard, 'they will run over them cows sure,' and I watched them for that purpose—for a witness—and the other cows got off, and this one did not.   The cows were right inside the tracks between the rails.   When I first saw the cows on the track I could hear the car coming up the hill.   That was when I made the remark to Mrs. Maynard, and then I watched the car, of course.   It was a good ways from the cows,

too. The cows were on the track when the car came in sight, and they continued on the track. The car never slackened at all—just like it comes down the hill any time. They generally slacken there at the curve, but they did not. The car was running quite fast. From the point where the cows were standing on the track you can see a long ways up the track. There is nothing along the track to obstruct the view down the track. * * * I cannot say how long the cow was on the track, because I do not know how long it would take them to come down from the hill up there. They must have been up there by Klondyke street anyway, when I heard them coming. Two of the cows got off the track. The second cow barely got off just in time, and the other one was nearly off, all but her hind hip. The speed was not slackened at all from the time the car got in sight before it struck the cow."

On the cross-examination the motorman testified, among other things:

" From the point where the cow was struck by the car, and up the track in the direction of Calumet, there was a clear, unobstructed view for several hundred feet. It is down grade as you come this way, and the car I had charge of was propelled by electric power, and I was acting in the capacity of motorman. I had the hand brake on, and I was coming down the hill the usual gait. When I want to give the car speed, I let off the brake and put on power. I reduce speed, of course, by putting on the brake. That car had air brakes and hand brakes. As motorman I have perfect control of the car. I can run it up over a high trestle, or in coming down that steep grade I can stop the car at pretty near any point I see fit. I had the brake on at that time. I do not mean by that that the air brake was on. I did not apply the air brake. You could not stop the car any quicker by the air brake than you could by the hand brake. If I knew I had to stop the car coming down the hill, I could stop it in two car lengths. I could not stop the car coming down that grade within a distance of forty or fifty feet. It is a conundrum within what distance I could stop the car coming down that hill if I had the air brake on and applied the brake and plugged the car. I could not stop it within the length of the car. If you plug a car, and the circuit break falls out or anything, you would be likely to go a little further.

If the circuit breaks do not fall out, I could probably stop the car within a car and a half or two car lengths. When I was coming down that morning I saw those cows by the side of the track, grazing. I was then probably three hundred feet away from the first two. Those two cows were not between the rails then. They were on the side. The third cow was just a little way behind them. The three cows were not inside of the rails when I saw them first. They were walking along when I first saw them, and the next time I looked up they were on the track going across. I continued to look down the track. The cows did not walk by the side of the track at all. They went across the track. They were not standing by the side of the track when I saw them first. They were walking up along taking a bite and walking along. I did not stop to see what they were doing exactly. The last time I saw the cows before they went on the track I was probably two hundred feet from them. They were then going across the track. Of course, I put on the brakes then, and used every effort to stop the car. All I did was to put the brakes on, which reduced the speed."

There was other testimony in the case. In view of all the testimony, we think it cannot be said there was no case for a jury. Nor is there such a showing as to warrant us in reversing the case because the trial judge overruled the motion for a new trial.

Judgment is affirmed.

The other Justices concurred.